IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Respondent, No. 2:02-cr-0416-GEB-JFM

vs.

DAWANE A. MALLETT,

Movant. FINDINGS AND RECOMMENDATIONS

__________________________________/

Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. In 2003, movant was convicted of two counts of aiding and abetting interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a)(2); two counts of use of a firearm, in violation of 18 U.S.C. § 924(c); one count of aiding and abetting armed bank burglary and kidnapping, in violation of 18 U.S.C. § 2113(a),(d) and (e); and one count of aiding and abetting carjacking a vehicle that has been transported in interstate commerce, in violation of 18 U.S.C. § 2119. On February 6, 2004, movant was sentenced to 654 months in federal prison.[1] In the instant motion, movant raises sixteen claims for relief from the conviction and sentence. Respondent contends that some of movant's claims

[1] Movant was also assessed a penalty of $600 and ordered to pay restitution in the amount of $1,844.83. See Judgment filed February 13, 2004.

are not cognizable on collateral review, that some of the claims are procedurally barred by movant's failure to raise them on direct appeal, and that none have merit.

FACTUAL BACKGROUND

Movant's convictions arose from four events: an attempted robbery of a Money Mart Store in Sacramento, California on March 20, 2002; an attempted robbery of a California Check Cashing business in Sacramento, California on May 30, 2002; carjacking, kidnapping of Alicia Montoya and an associated armed bank burglary on June 6 and 7, 2002; and wire fraud perpetrated on June 7, 2002. Movant was tried with a co-defendant, Terrance Mallett. Each had their own counsel at trial.

LEGAL STANDARDS

Section 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Ordinarily, a defendant may not raise a claim for the first time in a § 2255 motion. United States v. Frady, 456 U.S. 152, 167 (1982) (claim not raised on direct appeal is barred); United States v. Johnson, 988 F.2d 941, 945 (9th Cir.1993) ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claimed error."). "'Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent."' " U.S. v. Ratigan, 351 U.S. 957, 964 (9th Cir. 2003 (quoting Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations

omitted)). "Constitutionally ineffective assistance counsel constitutes cause sufficient to excuse a procedural default." Ratigan, at 964-65 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986). However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. at 486.

MOVANT"S CLAIMS

I. Ineffective Assistance of Counsel

Movant raises two claims of ineffective assistance of counsel. In his first claim, he contends that his defense counsel was ineffective in (1) failing to cross examine Alicia Montoya; (2) refusing to allow movant to testify in his own defense; and (3) withdrawing movant's plea of not guilty by reason of insanity. In his fourth claim for relief, movant contends that his appellate counsel was ineffective in (1) failing to raise on direct appeal all of the claims raised in the instant motion; (2) failing to communicate with movant before filing a direct appeal; (3) failing to keep movant apprised of the status of his appeal; and (4) placing a collect call block on his telephone after being appointed to represent movant on direct appeal.

In order to prevail on his claims of ineffective assistance of counsel, movant must show two things, an unreasonable error and prejudice flowing from that error. First movant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 688 (1984). The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. at 690. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986).

Second, movant must prove prejudice. Strickland at 693. To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, at 697.

The court turns first to movant's claim of ineffective assistance of trial counsel, which, as noted above, contains three separate contentions. With respect to the first, the record shows that neither movant's counsel nor his co-defendant's counsel cross-examined Ms. Montoya. See Reporter's Transcript (RT) at 390:24-391:1. Movant has made no showing of any cognizable prejudice as a result of his counsel's decision not to cross-examine Ms. Montoya, nor does it appear from the record that movant was so prejudiced.

With respect to the second contention, the record does not support movant's assertion that counsel refused to allow him to testify. At a bench conference following the conclusion of the government's case-in-chief, movant's counsel advised the court that he had "just confirmed with [movant] that he does not wish to testify. RT at 672:22-23. Subsequently, in open court in front of the jury movant's counsel represented that his defense rested "on the state of the evidence" and movant made no attempt to indicate that he wished to testify. RT at 684:11. Moreover, movant has made no showing of prejudice from his failure to testify.

Finally, as noted above, movant contends that his trial counsel rendered ineffective assistance by withdrawing a plea of not guilty by reason of insanity. In fact, the record shows that prior to appointment of his trial counsel, movant filed notice pursuant to Fed. R. Crim. P. 12.2 of intent to rely on an insanity defense. See, e.g., Docket No. 203. Subsequently, the trial court revoked movant's right to represent himself and appointed trial counsel, who had previously been serving as stand-by counsel, to represent petitioner. See Order

filed October 24, 2003. Thereafter, counsel did not pursue an insanity defense. Movant has presented no evidence to show that he suffered cognizable prejudice as a result of this decision.

For all of the foregoing reasons, movant's claim of ineffective assistance of trial counsel should be denied.

Movant's claim of ineffective assistance of appellate counsel is based on four contentions: the failure of appellate counsel to raise on direct appeal all of the claims raised in the instant motion; the alleged failure of appellate counsel to communicate with movant before filing a direct appeal; the alleged failure of appellate counsel to keep movant apprised of the status of his appeal; and the alleged action of appellate counsel in placing a collect call block on his telephone after being appointed to represent movant on direct appeal.

With respect to the latter contention, respondent has presented evidence from movant's appellate counsel that his "general policy is to accept collect calls from incarcerated clients" and that he "did not put a collect call block on his telephone while he was representing" movant, Declaration of Victor S. Haltom, Esq., filed July 17, 2009 (Haltom Declaration), at ¶ 5. Mr. Haltom also avers that he spoke with movant on the telephone during the course of the representation, and that he has "over the years . . . been told by some clients that they attempted to make collect calls to [his] office telephone but the calls did not go through." Id. at ¶¶ 4, 6. In response, movant has filed an affidavit in which he avers only that Mr. Haltom refused "to communicate with [movant] before filing [his] direct appeal." Affidavit of Dawane Arthur Mallett, filed September 13, 2010 (Mallett Affidavit), at 2. This affidavit is insufficient to rebut the evidence filed by respondent. This court finds no evidence to support movant's assertion that his appellate counsel blocked collect calls from movant during the course of representation.

Movant's contention that his counsel was ineffective in failing to raise all the claims raised in the instant motion would require a showing that the outcome of his appeal would have been different had those claims been raised. For the reasons set forth infra, movant's claims are without merit. He cannot, therefore, make the required showing of prejudice.

Finally, movant makes two contentions concerning alleged failures of his appellate counsel to communicate with him, both before filing the appeal and during the pendency of the appeal. Movant's appellate counsel has averred that he visited with movant in the Sacramento County Jail before movant was transferred to federal prison, that he communicated with him in writing thereafter, that he provided movant with copies of the appellate briefs, and that he spoke with movant on the telephone while the appeal was pending. Haltom Declaration, at ¶¶2-4. Movant's declaration is insufficient to rebut this evidence. See Mallett Affidavit at 2. Moreover, even assuming arguendo that these allegations were supported by evidence in the record, movant has not shown any cognizable prejudice from any alleged failure by his appellate counsel to communicate with movant.

For all of the foregoing reasons, movant's claim of ineffective assistance of appellate counsel should be denied.

II. Movant's Remaining Claims

Movant raises fourteen claims in addition to the foregoing two claims of ineffective assistance of counsel. Respondent contends that the remaining claims are barred by the doctrine of procedural default because the claims should have been, but were not, raised on direct appeal, that claims five, ten, and sixteen are not cognizable on collateral review, and that none of these claims have merit.

A. Claims Five, Ten and Sixteen

1. Claim Five – Violation of Sixth Amendment Right to Speedy Trial

In Claim Five, movant claims that he "demanded a speedy trial at every court appearance, but was denied," in violation of his Sixth Amendment right to a speedy trial. Respondent contends that a claimed violation of the Speedy Trial Act is not cognizable on this § 2255 motion, but movant relies on the federal constitution rather than the federal statute on the

> "The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy trial." Doggett v. United States, 505 U.S. 647, ----, 112 S.Ct. 2686, 2690, 120

> L.Ed.2d 520 (1992). Speedy trial challenges are subject to a four part inquiry governed by Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971). The four factors are: "(1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice" because of the delay. Doggett, 505 U.S. at ----, 112 S.Ct. at 2690; United States v. Turner, 926 F.2d 883, 889 (9th Cir.), cert. denied, 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).
>
> Doggett breaks the first inquiry, length of delay, into two steps. 505 U.S. at ----, 112 S.Ct. at 2690. To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. Id. If this threshold is not met, the court does not proceed with the Barker factors. Id. If, however, the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief. Id. 505 U.S. at ----, 112 S.Ct. at 2690, 2693-94.
>
> If the length of the delay has not passed a threshold point of presumptive prejudice-at least one year-the court need not consider the other three factors. United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir.1993) (citing Doggett v. United States, 112 S.Ct. 2686, 2690 (1992)). If, however, the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief. Id. 505 U.S. at ----, 112 S.Ct. at 2690, 2693-94.

U.S. v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993)

The original criminal complaint was filed against movant on September 6, 2002 and a warrant for movant's arrest was issued on the same day. Movant made his initial appearance before a United States Magistrate Judge on September 10, 2002 and was ordered detained. On September 19, 2002, an indictment was filed. Movant was arraigned on September 24, 2002 and entered a not guilty plea. A second superseding indictment was filed on July 30, 2003. Trial commenced on October 28, 2003.

More than one year elapsed between the filing of the original criminal complaint, as well as the indictment, and the start of jury trial. Specifically, the one year threshold was

exceeded by 52 days. Movant acquiesced in the exclusion of well over 52 days of time between September 6, 2002 and October 28, 2003. See, e.g., Docket # 10 (8 days); Docket # 12 (24 days); Docket # 12 (8 days); Docket # 24 (120 days); Docket # 38 (35 days). Movant's Sixth Amendment right to a speedy trial was not violated in the underlying criminal proceedings. This claim should be denied.

2. Claim Ten

In his tenth claim for relief, movant alleges violation of his rights under the Fourth and Fifth Amendments as well as the Omnibus Crime Control and Safe Streets Act. Movant contends that he used a telephone in a jail holding cell and was not informed that the calls were being recorded. He claims that the court erred in not suppressing recordings of the tapped telephone calls. Respondent contends that this claim is not cognizable on this § 2255 motion because movant had a full and fair opportunity to litigate the claim at trial.

Movant's claim arises, if at all, under the Fourth Amendment.[2] Movant is not entitled to relief on a Fourth Amendment claim where he had a full and fair opportunity to litigate his Fourth Amendment claim at the time of the underlying trial. See Tisnado v. U.S., 547 F.2d 452, 456 (9th Cir. 1976) (citing Stone v. Powell, 428 U.S. 465, 481 & n.16 (1976)). Movant has made no showing that he did not have that opportunity at trial. This claim should be denied.

3. Claim Sixteen

In his sixteenth claim for relief, movant challenges the computation of his sentence under the Federal Sentencing Guidelines. Movant contends that he was improperly given two points for an escape conviction that he suffered as a juvenile and two points for being arrested for his current offense less than two years "from last offense." Section 2255 Motion,

---

[2] Movant has made no showing that the recording of jail telephone calls between movant and his co-defendant violated the Omnibus Crime Control and Safe Streets Act of 1968. The statute, by its terms, exempts from its coverage "oral communications . . . intercepted by investigative and law enforcement officers acting in the ordinary course of their duties." U.S. v. Van Poyck, 77 F.3d 285, 292 (9th Cir. 1996) (citing 18 U.S.C. § 2510(5)(a)).

Attachment at 6. Movant apparently contends that this was improper because all four points were derived from the same conduct. See id. Movant contends that this caused him to be improperly placed in Criminal History Category III for sentencing purposes, rather than Criminal History Category I.

At the outset, the court notes that "nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255." U.S. v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994).[3] Even assuming arguendo that the merits of this claim are tendered through movant's ineffective assistance of appellate counsel claim, the claim should be denied.

The Federal Sentencing Guidelines contain instructions for computing a defendant's criminal history. See United States Sentencing Guidelines, Chapter Four, Part A. Pursuant to those guidelines, a defendants receives two points "for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of" the offense for which he is to be sentenced. U.S.S.G. § 4A1.2(d)(2)(A). The sentencing guidelines also provide for addition of points for prior prison terms. U.S.S.G. § 4A1.1. At the time movant was sentenced, the guidelines also required an addition of two points if the defendant committed the current offense "less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence." Former U.S.S.G. § 4A1.1(e) (removed by 2010 Amendments).

> "Double counting" occurs when the Guidelines use the same conduct more than once to increase the severity of a sentence. Double counting is permissible if it accounts for more than one type of harm caused by the defendant's conduct, or where each enhancement of the defendant's sentence

---

[3] Although movant claims this violated his Fifth Amendment right to due process, respondent correctly argues that the claim is in fact a claim of error in the application of the Federal Sentencing Guidelines.

> serves a unique purpose under the guidelines. See United States v. Calozza, 125 F.3d 687, 691 (9th Cir.1997); United States v. Reese, 2 F.3d 870, 895 (9th Cir.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994).

U.S. v. Parker, 136 F.3d 653, 654-55 (9th Cir. 1998). The fact that movant served a prior prison sentence is different from the proximity between the conclusion of that sentence and his present offense. The computation of his criminal history score challenged by movant was not erroneous. This claim should be denied.

B. Claims Two, Three, Six, Seven, Eight, Nine, Eleven, Twelve, Thirteen, Fourteen and Fifteen

1. Sufficiency of the Evidence

Six of movant's remaining claims are styled claims of insufficient evidence/actual innocence. See Grounds 2, 3, 12, 13, 14 and 15 of § 2255 Motion, filed April 3, 2008. In those claims, movant contends there was insufficient evidence to support his conviction on charges of use of a firearm during a crime of violence, interference with commerce with respect to the robbery of Money Mark or the Check Cashing business, armed bank burglary and kidnapping, or carjacking. Ground 2 also includes an assertion that his prosecution for use of a firearm during a crime of violence violated his rights under the Double Jeopardy Clause because he had already served time in state prison for the same offense.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts." Jackson, 443 U.S. 307, 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

a. Sufficiency of the Evidence to Support Convictions from Attempted Robbery of Money Mart

In grounds two and twelve of the petition movant challenges the sufficiency of the evidence to support his conviction on charges of aiding and abetting robbery in violation of 18 U.S.C. § 1951 and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), charged in counts 1 and 2 of the second superseding indictment. A violation of 18 U.S.C. § 1951, so called Hobbs Act robbery, has two elements: "(1) that the defendant either committed or attempted to commit a robbery, and (2) a nexus between the defendant's acts and interstate commerce. 18 U.S.C. § 1951(a); Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)." U.S. v. Woodruff, 122 F.3d 1185 (9th Cir. 1997). A violation of 18 U.S.C. § 924(c) has three elements: (a) commission of a crime of violence; (b) knowingly carrying or using a firearm; and (c) carrying or using the firearm during and in relation to the crime or possessing the gun to further the crime. See 18 U.S.C. § 924(c)(1)(A). Counts 1 and 2 were based on charges arising from the attempted robbery at the Money Mart store.

With respect to count 1, movant contends that he did not interfere with commerce, that he neither robbed nor attempted to rob the Money Mart, and that he "did time for this same offense." With respect to count 2, movant contends that (1) he "did time in state court for the same offense"; and (2) he did not use a firearm during a crime of violence, e.g., robbery. Section 2255 Motion at 4.

Movant has presented no evidence in support of his contention that his right to protection from double jeopardy was violated by his conviction on count 1 or count 2 because he "did time" for the same offense. Specifically, movant has presented no evidence of any state charges or conviction arising from that attempted robbery. Moreover, it is well settled that "a

federal prosecution may follow a state prosecution for the same acts." U.S. v. Enas, 255 F.3d 662, 666 (9th Cir. 2001) (citing United States v. Lanza, 260 U.S. 377, 382 (1922)).

At trial, a Sacramento police officer gave the following testimony relevant to disposition of the claim at bar. Movant was found in the ceiling at the Money Mart store after the officer responded to a burglary alarm. RT at 177:17-179:14. Movant was wearing a blue coat, pink gloves, and a ski cap with eyeholes cut in it. Id. at 180:12-181:15. The ski cap was on the top of movant's head and his face was exposed. Id. at 181:18-22. While movant was lowering himself from the ceiling, the officer "noticed the butt of a gun hanging from his jacket." Id. at 180:12-16. A second police officer who responded to the Money Mart alarm testified that he saw "the handle of a gun sticking out of the left pocket of this jacket" and that he retrieved the gun, a .38 caliber revolver, from movant's jacket. RT at 197:15-205:24. A third officer testified on cross-examination that he had no information that anything had been taken from the Money Mart. RT at 222:12-14.

The testimony that movant was discovered waiting in the ceiling area of the Money Mart wearing a ski cap that had eyeholes cut into it and armed with a gun could support an inference that movant was waiting to commit a robbery by threat of force or violence, in violation of 18 U.S.C. § 1951(a), which qualifies as a crime of violence within the meaning of 18 U.S.C. § 924(c)(1), as well as an inference that movant was knowingly carrying the firearm and that he was in possession of the gun to further the planned robbery. The evidence was sufficient to support movant's conviction on counts 1 and 2 and movant's appellate counsel was not ineffective for failing to challenge those convictions on the ground of insufficient evidence. Movant has not shown cause and prejudice for the failure to raise these claims on direct appeal.

b. Sufficiency of the Evidence to Support Convictions from Attempted Robbery of California Check Cashing

In grounds three and thirteen of the petition movant challenges the sufficiency of the evidence to support his conviction on charges of aiding and abetting robbery in violation of

18 U.S.C. § 1951 and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), charged in counts 3 and 4 of the second superseding indictment. Those counts arose from events at the California Check Cashing business.

With respect to count 3, movant contends that he did not interfere with commerce, that he neither robbed nor attempted to rob the California Check Cashing business. With respect to count 4, movant contends that the gun offered in evidence was found ten days after movant was arrested and had no fingerprints on it.

At trial, the following testimony relevant to disposition of the claim at bar was offered. Sacramento County Sheriff's Deputy Rudolfo Roque identified movant as one of the subjects arrested at the scene of the break-in at the California Check Cashing business. RT at 340:18-343:9.[4] The branch manager of the California Check Cashing business testified that he was working on the day of the attempted robbery. RT at 226:25-227:4. After the break-in, he did not empty the trash in his office for about a week. Id. at 242:24-243:4, 248:15-20. When he did lift his wastebasket to empty it "felt rather heavy for a wastebasket" that he "assumed" just contained "calculator tape and fast food trash." Id. at 243:8-11. He took the wastebasket to empty it into a larger trash can, pushed some of the paper aside, and found a drawstring bag that contained a roll of duct tape and a gun partially wrapped in a knit cap. Id. at 243:20-244:18. He immediately called 911 and gave the items to the deputies who responded to the call. Id. at 248:24-249:6. In addition, the government offered a transcript of a recorded conversation between movant and his co-defendant from which a reasonable inference could be drawn that movant told his co-defendant that he had put the gun in the wastebasket. See RT at 693:11-21

---

[4] The testimony concerning the circumstances of movant's arrest and that of his co-defendant is somewhat confusing. The testimony of Sacramento County Sheriff's Deputy Wayne Stephens implies that movant's co-defendant was arrested inside the California Check Cashing business, but other testimony implies that movant's co-defendant was seen in a field adjacent to the business using a walkie-talkie and that movant was arrested inside the building. For purposes of this motion, it is sufficient that there was testimony that movant was taken into custody in the building as one of the perpetrators.

(during closing argument, slide 7 containing transcription of conversation distinguishing between "walkie talkie" and "shit"; movant affirming that the two were different and that "[i]f the junk get dumped" the "shit will be gone.").

The foregoing evidence is sufficient to support an inference that movant was armed at the time of the attempted robbery of the California Check Cashing business. The evidence was sufficient to support movant's conviction on counts 3 and 4 and movant's appellate counsel was not ineffective for failing to challenge those convictions on the ground of insufficient evidence. Movant has not shown cause and prejudice for the failure to raise these claims on direct appeal.

c. Sufficiency of Evidence to Support Armed Bank Burglary and Kidnapping

In his fourteenth and fifteenth claims for relief, movant contends that his convictions for armed bank burglary and carjacking were not supported by sufficient evidence because no weapon was ever shown to the jury or admitted into evidence. At trial the victim testified that a knife was used in the commission of the offense. See, e.g., RT at 370:16-371:10, 371:12-24. That testimony is sufficient to support this conviction. Movant's appellate counsel was not ineffective for failing to challenge those convictions on the ground of insufficient evidence, and movant has not shown cause and prejudice for the failure to raise these claims on direct appeal.

2. Claim Six

Movant's sixth claim for relief is that his Fifth Amendment right to due process was violated because he was incompetent to stand trial. Movant claims that he was sent to the Federal Medical Center at Butner (Butner) for a competency evaluation but no evaluation took place. Movant further claims that he was placed on suicide watch while he was at Butner but that was omitted from the report to the court, and that the results of his competency test were also withheld from the court.

Movant's claim is without factual foundation. The record reflects that movant did receive a competency evaluation, that a report of that evaluation was provided to the court, and that the report did include information about movant's placement on suicide watch. See Order filed April 14, 2003; Forensic Evaluation dated April 1, 2003, a copy of which is appended to Docket # 66, at 6. Movant's appellate attorney was not ineffective for failing to raise this claim on direct appeal, and movant has established neither cause nor prejudice for the procedural default of this claim.

3. Claims Seven and Eight

Movant's seventh and eight claims for relief arise from an outburst by defendant during trial. Movant alleges that he threatened to kill the jury during the outburst and had a mental breakdown. He further alleges that he was tackled by U.S. Marshals in the presence of the jury, removed from the courtroom, and denied all means to communicate with his lawyer. He alleges that these events and the court's denial of his subsequent motion for mistrial violated his Fifth Amendment right to due process.

Prior to trial, movant engaged in conduct that led to his exclusion from the courtroom and a finding of criminal contempt by the trial court. RT, October 27, 2003, at 31:2-32:4. Movant was returned to court the next day for the start of trial and allowed to remain on his assurance to the court that he would conduct himself in accordance with court decorum. RT at 1:23-2:9. The court advised movant that arrangements had been made for any defendant removed from the courtroom to be provided with audio and video feed of the trial proceedings, but that no telephone would be installed in the cell. Id. at 2:23-3:11. Movant remained in the courtroom throughout the course of trial. During the prosecution's closing argument, movant interrupted and the following exchange took place:

> DEFENDANT D. MALLETT: He's lying. Shut your white ass up.
>
> THE COURT: Just a moment.

> DEFENDANT D. MALLETT: Fuck the jury and all y'all white mother fuckers.
>
> THE COURT: You are –
>
> DEFENDANT D. MALLETT: Guilty. Both defendants are guilty.
>
> THE COURT: You're disrupting the proceeding. Remove him from the proceeding.
>
> DEFENDANT D. MALLETT: They taking the shackles off right now.
>
> THE COURT: The jury is in recess.
>
> DEFENDANT D. MALLETT: Both defendants are guilty. Terrance Mallett is guilty. Fuck all you white –
>
> THE COURT: Jury may leave the courtroom for ten minutes.
>
> DEFENDANT D. MALLETT: The black lady going to die. All you mother fuckers are going to die. White son-of-a-bitch. Old pieces of shit. Fuck white people. Fuck all the females.
>
> THE COURT: The jury is instructed to disregard what the defendant states.
>
> DEFENDANT D. MALLETT: Kill all your mother fucking grandkids. Don't put your press on me, homey. Fuck your kids. Fuck your grandkids. Fuck your grandkids. Fuck your mother fucking family. I'm going to kill all you mother fuckers. Fuck you too, Burrell. Fucking bitch. I'm cool. I'm cool. Don't put pressure on me. I'm serious, man, don't put no pressure. I said I'm cool. Don't put no pressure.
>
> THE COURT: Let the record reflect the jury has exited the courtroom. You are excluded from this courtroom.
>
> Let the record reflect that the defendant, Dawane Mallett, has been taken from the courtroom.
>
> I'd like counsel to assist the Court with communication to the jury when the jury returns.

RT at 694:16-696:1. Following his removal from the courtroom, the U.S. Marshal advised the court that movant would be in the cell with the audio and video feed "in an hour or so." Id. at 699:12-17. When the jury returned to the court room, the court instructed them not to consider

/////

anything they had heard movant say, inquired whether they could follow that instruction, and received no indication from any juror that they could not. Id. at 710:13-24.

The United States Supreme Court has held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the courtroom that his trial cannot be carried on with him in the courtroom." Illinois v. Allen, 397 U.S. 337, 343 (1970). Movant's constitutional rights were not violated by his removal from the courtroom.

Following movant's outburst, his counsel joined in a motion for mistrial made by movant's co-defendant. RT at 702:21-25. The court found that movant's outburst appeared "to be a calculated attempt to disrupt th[e] trial and to create some type of an error" and denied the motion. RT:704:8-705:17. Where, as here, movant's own misconduct gave rise to the problem and the court took reasonable steps to insure the jurors could serve impartially there is no error in denying a motion for mistrial. See U.S. v. McCormac, 309 F.3d 623, 626-27 (9th Cir. 2002). Movant's appellate attorney was not ineffective for failing to raise this claim on direct appeal, and movant has established neither cause nor prejudice for the procedural default of this claim.

4. Claim Nine

In his ninth ground for relief, movant alleges that during a period that he was representing himself the Sacramento County Sheriff refused to allow movant to question his co-defendant, refused to allow him to make "legal calls", refused to give him five hours a week of law library privileges, and the law library clerk failed to file movant's motions on time or to allow movant to do so through the law library. In its opposition to movant's motion, respondent suggests that some of these events occurred before the jail received a copy of the court's order allowing movant to represent himself, while movant's complaints about difficulties in filing motions were cured by his stand-by counsel. See Government's Opposition to Mallett's Petition Pursuant to 28 U.S.C. § 2255, filed July 17, 2009, at 36-37. Movant has failed to establish any

constitutional violation concerning his ability to access the courts during his period of self-representation. For that reason, this court finds that his appellate attorney was not ineffective in failing to raise such a challenge on direct appeal and, therefore, that movant has failed to show cause and prejudice sufficient to cure the procedural default of this claim.

5. Claim Eleven

In his eleventh claim, movant alleges that the trial court erred in denying his motion to sever his case from that of his co-defendant so that he could testify on behalf of his co-defendant without incriminating himself.[5] Even assuming arguendo that movant could assert the rights of his co-defendant to movant's testimony, movant has made no showing that he would have provided testimony favorable to his co-defendant. See, e.g., U.S. v. Reese, 2 F.3d 870, 892 (9th Cir. 1993). Movant's appellate attorney was not ineffective for failing to raise this claim on direct appeal, and movant has established neither cause nor prejudice for the procedural default of this claim.

For all of the foregoing reasons, movant's § 2255 motion should be denied. Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2255. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons

[5] Movant also alleges that the "court erred by erroneously denying all of defendant's motions without "legal standing's" and failed to rule on a motion for bail before proceeding to trial. Respondent suggests that movant's first contention may be that the court lacked jurisdiction over his pretrial motions, a contention that is plainly without merit. The record reflects that movant's motion for release on his own recognizance was denied by a magistrate judge, see Minutes of Arraignment, August 7, 2003, and movant did not renew this motion before the trial court.

set forth in these findings and recommendations, movant has not made a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability should issue.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Movant's April 3, 2008 motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied;

2.  The district court decline to issue a certificate of appealability; and

3.  The clerk of the court be directed to close the companion civil case No. 2:08-cv-0707 GEB JFM.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 3, 2011.

UNITED STATES MAGISTRATE JUDGE

12
mall0416.257