UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA (SAC)

UNITED STATES OF AMERICA      2:02-CR-416-TLN
Plaintiff                     Case No.
VS
DAWANE ARTHUR MALLETT-EL
Defendant

FILED
JUN 13 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

Motion For Compassionate Release
Pursuant to 18-USC-3582(c)(1)(A) and
The First Step Act of 2018:

## OPENING STATEMENT:

The Constitution of the United States of America of 1789; ratified PREAMBLE: We the People of the United States, in order to form a more perfect Union establish Justice, insure domestic tranquility provide for the Common-defense, promote the general welfare and secure the Blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America.

Claim One: Lack of US Constitutional Article 1 Sec 8 Cl. 17 Exclusive Legislation

(TRUE BILL)

SUPPORTING FACTS: IT IS A CLEAR POINT That a COURT wanting of Jurisdiction Cannot render a Judgment at all, and if the COURT moves to ENTER

PAGE 1 of 4

any order or a Judgment and it NEVER aquired Jurisdiction, This would warrant Extraordinary and Compelling Reason's For The Court To Grant Compassionate Release; The Constitution makes it mandatory That The United States Government MUST have ON Record a CESSION OF Legislative Jurisdiction as EXCLUSIVE legislation, and The US GOVERNMENT Shall have ACCEPTED The CESSION OF EXCLUSIVE Legislation PER 40-USCS-3112, acceptance of Jurisdiction over real Property by the United States.

See Foley Bros INC V. Filardo 336 US 281, 285, 69 S.Ct 575, 93 Led 680 (1949) Territorial Jurisdiction of the United States. EEOC V. Arabian American Oil Co. 499 US 244, 248, 111 S.Ct 1227 113 Led 2d 274 (1991) morrison V. Nat"l Aust Bank Ltd 561 US 247 255, 130 Sct 2869, 177 Led 2d 535, 130 Sct 2869 177 Led 2d 535 (2010)

SEE United States V. Javier Perez et al 962 F.3d 420, June 11, 2020
SEE Westerngeco LLC V. ION Geophysical Corporation, 138 Sct 2129, 201 Led 2d 584  June 22, 2018

Each Offense was Committed Outside of the Territorial Jurisdiction Of The United States, and Therefore

The Government lacked Constitutional Article 1 Sec 8 Clause 17 EXCIUSIVE Legislation (Territorial Jurisdiction) if The United States Government NEVER aquired from the State a CESSION OF EXCIUSIVE Legislation, Then The EXCIUSIVE Legislative is Retained BY The SOVERIGN STATE; THE Following offenses were Committed outside of The Territorial Jurisdiction of The United States; 1. 18-USC-2113 (e) (2) 18-USCS-1951 a and 18-USC-2 and 18-USC-2119 and 18-USC-2 and 2 counts of 18-USC-924 (c)(1)(A);

SEE The attached STATE OF CALIFORNIA LAND COMMISSION, Documented FACT ON WHICH SOVEREINTY HAS THE EXCIUSIVE Legislation OVER The Locations That i was Charged with IN my Indictment.

REQUESTED RELIEF: THE COURT Shall First address The QUESTION OF Jurisdiction TO BrinG An Indictment make an arrest, and ajudicate a Conviction without The US Government having EXCIUSive Legislation Per the Constitution Article 1 Sec 8 Cl. 17

AND Declare The Indictment as NULL and VOID From The begining and Set aside The Judgement as

PAGE 3 of 4

VOID FOR LACK OF Territorial Jurisdiction.

THE COURT SHALL TAKE Judicial NOTICE OF The PREAMBLE TO The US Constitution OF 1789 We the People as The Proper peculiar province for The Court TO Interpret the law; And Take Judicial notice of case 18-71553 DK entry #67 IN The NINTH CIRCUIT COURT OF APPEALS.

## Certificate of Service

This Motion was placed IN the Mail TO Be Divered TO The US District Court and The assistant US Attorney. ON 5-20-22

1. Katherine T Lydon, Assistant US Attorney
   Eastern District of California
   501 I Street, Suite 10-100
   Sacramento, California. 95814

2. Clerk of US District Court
   501 I Street
   Sacramento, California

Return Address of Applicant

5-20-22         3. Daware Arthur Mallett-el
DATE               13944-097
                US Penitentiary max
                PO Box 8500
                Florence, CO. 81226

PAGE 4 of 4

STATE OF CALIFORNIA (Exhibit) GAVIN NEWSOM, Governor

**CALIFORNIA STATE LANDS COMMISSION**
100 Howe Avenue, Suite 100-South
Sacramento, CA 95825-8202



*Established in 1938*

**JENNIFER LUCCHESI**, Executive Officer
**916.574.1800**
TTY CA Relay Service: **711** or Phone **800.735.2922**
from Voice Phone **800.735.2929**
or for Spanish **800.855.3000**

February 24, 2022

Dawane Arthur Mallettoel
13944-097
U.S. Penitentiary Max
PO Box 8500
Florence, CO 81226

Subject: **Records Request and Legislative Jurisdiction Inquiry**

Mr. Mallettoel:

The State Lands Commission (Commission) has received your request for information and records regarding legislative jurisdiction at the Money Mart, California Check Cashing, and Wells Fargo Bank locations in Sacramento. I reviewed the Commission's records and found no evidence that California has ever ceded legislative jurisdiction over the lands at any of those three locations. Consequently, I conclude that the State of California retains all legislative jurisdiction over those three locations.

You also requested a copy of a map that depicts all lands where California has ceded legislative jurisdiction. No such map exists. There are legislative jurisdiction maps of specific locations, mostly military bases, but there is not one map that shows all locations of cessions in California. The Commission has no maps of any of the three locations you provided.

If you have any additional questions, please feel free to direct them to me at the address above.

DocuSigned by:
*Patrick Huber*
74DDE5D59DAC4DA...
PATRICK HUBER
Attorney

(Exhibit) iN SupporT OF MOTiON FOR Compassionate Release

DAWANE ARTHUR MALLETT, 13944-097
FLORENCE ADMAX USP   UNT: J/A   QTR: J02-210L
PO BOX 8500
FLORENCE, CO 81226

**RECEIVED**
MAY 17 2022
ADX Warden's Office

**Administrative Remedy No. 1101623-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you challenge the denial of your request for a Reduction in Sentence (RIS) based on extraordinary and compelling reasons. Specifically, you claim to be eligible to for compassionate release due to jurisdictional issues that resulted in an unconstitutional conviction and sentence. For relief, you request a RIS.

In accordance with Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, sets forth the criteria the Director considers for a RIS. For all RIS requests, the following factors should be considered: nature and circumstances of the inmate's offense, criminal history, comments from victims, unresolved detainers, supervised release violations, institutional adjustment, disciplinary infractions, personal history derived from the PSR, length of sentence and amount of time served, inmate's current age, inmate's age at the time of offense and sentencing, inmate's release plans, whether release would minimize the severity of the offense. Additionally, a request for reduction in sentence under 18 U.S.C. § 3582 (c)(1)(A) will be considered when there are extraordinary and compelling reasons meeting the criteria in Section 7 which warrant the reduction; there is no danger to the safety of any other person or to the community, and the reduction is consistent with policy.

The First Step Act provides inmates sentenced under the Sentencing Reform Act of 1984 the right to bring a motion requesting a reduction in their sentence with the relevant sentencing court. However, an inmate may direct a RIS request to the Bureau of Prisons pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g) only when there are extraordinary or compelling circumstances that could not reasonably have been foreseen by the court at the time of sentencing. You do not provide "extraordinary and compelling reasons" or supporting evidence which warrant a RIS pursuant to 18 U.S.C § 3582(c)(1)(A). Thus, staff appropriately determined that your request did not meet the criteria for a RIS pursuant to Program Statement 5050.50.

Accordingly, your request is denied.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

**U.S. Department of Justice**
Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

da 2/9/2022  1101623 R1  (ONGoing Violations)

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mallett-EL, Dawane A.  13944-097  JoA. 211  ADX Florence
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A - REASON FOR APPEAL** This is an appeal of the Administrative Remedy No #1101623-R1 to which the regional Director stated that the BOP does NOT consider the lack of Territorial Jurisdiction as per the US Constitution Article 1 sec 8 Cl 17 as Extraordinary or Compelling reasons to grant compassionate Release, he claims that it could NOT have been foreseen by the Court at the time of sentencing. The Court is constitutionally bound to know if it has jurisdiction at all times and any action by a Court without it is Null and void, and the Bureau of Prisons can be criminally liable for each act committed against me in it's custody without jurisdiction to hold me in prison; Requested Relief, I Request for the Bureau of prisons to Proove on the record that the offense or offenses in the territory of US. I am in custody on IN;

2-10-2022
DATE

Dawane Arthur mallett-el
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
MAR 03 2022
Administrative Remedy Section
Federal Bureau of Prisons

_____          _____
DATE                                   GENERAL COUNSEL
ORIGINAL: RETURN TO INMATE     CASE NUMBER: 1101623-A1

**Part C - RECEIPT**
                                               CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION
SUBJECT: _____

_____          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL
DATE

USP LVN                                          BP-231(13)
                                                 JUNE 2002

fjurisdiction

The American legal system includes both state courts and federal courts. Generally, state courts hear cases involving state law, although they may also hear cases involving federal law so long as the federal law in question does not grant exclusive jurisdiction to federal courts. Federal courts may only hear cases where federal jurisdiction can be established. Specifically, the court must have both subject-matter jurisdiction over the matter of the claim and personal jurisdiction over the parties. Key concepts in general federal law in the USA (other countries using a federal system differ), at all court levels, include standing and the Case or Controversy Requirement. These apply as strongly to constitutional cases as to any others, and often a seemingly "civil rights" related issue is rejected by the courts for these reasons. They flow from Article III, Section 2 of the United States Constitution. Standing means that a person raising a constitutional issue must be someone who, if his or her assertion is correct, will personally suffer an infringement of his or her rights if the court does not intervene. This means that, except in unusual circumstances (see third-party standing or class action), one cannot sue on behalf of another. The Case or Controversy requirement means that there must be at least two adversarial parties and an actual dispute between them. The effect is that federal courts in the United States will not issue advisory opinions or rule on hypothetical issues. (But see: Declaratory judgment). To these two concepts, constitutional law adds the state action requirement. Simply put, a private citizen cannot violate another private citizen's constitutional rights. A case does not become a constitutional issue unless one party can show that a local, state, or federal government agency, officer or official was involved. For example, if a private citizen invades another citizen's house, the first citizen is liable to the second one in a lawsuit for trespass; on the other hand, if a police officer invades a citizen's home without a valid warrant or probable cause, the police agency or the officer can be found liable for violating the citizen's constitutional rights. (State and municipal officers are exposed to liability by http://www.law.cornell.edu/uscode/html/uscode42/usc_sec_42_00001983----000-.html 42 USC 1983]; cause of action against federal officers is due primarily to Bivens v. Six Unknown Named Agents, 403 U.S. 388.) The first example is merely a violation of the legal right to privacy; the second is a violation of the Constitution's Fourth Amendment prohibition against unreasonable searches and seizures. (Note here: Some cases which the Supreme Court of the United States accepts and decides involve constitutional rights; others involve the interpretation of legal rights.) The Supreme Court has "cautioned that ... Court[s] must take great care to 'resist the temptation' to express preferences about [certain types of cases] in the form of jurisdictional rules. Judges must strain to remove the influence of the merits from their jurisdictional rules. The law of jurisdiction must remain apart from the world upon which it operates." A. Althouse, Standing, in Fluffy Slippers, 77 Va. L. Rev 1177, 1189 (1991) (characterizing the Supreme Court's decision in Whitmore v. Arkansas, 495 U.S. 149 (1990)). Generally, when a case has successfully overcome the hurdles of Standing, Case or Controversy and State Action, it will be heard by a trial court. The non-governmental party may raise claims or defenses relating to alleged constitutional violation(s) by the government. If the non-governmental party loses, the constitutional issue may form part of the appeal. Eventually, a petition for certiorari may be sent to the Supreme Court. If the Supreme Court grants certiorari and accepts the case, it will receive written briefs from each side (and any amici curiae or friends of the court--usually interested third parties with some expertise to bear on the subject) and schedule oral arguments. The justices will closely question both parties. When the Court renders its decision, it will generally do so in a single majority opinion and one or more dissenting opinions. Each opinion sets forth the facts, prior decisions, and legal reasoning behind the position taken. The majority opinion constitutes binding precedent on all lower courts; when faced with very similar facts, they are bound to apply the same reasoning or face reversal of their decision by a higher court.

] Legislative jurisdiction

In U.S. law, another aspect of federal jurisdiction is the extent of federal legislative power. Under the Constitution, Congress has power to legislate only in the areas that are delegated to it. Under clause 17 of Article 1, Section 8 of the Constitution, however, Congress has power to "exercise exclusive Legislation in all cases whatsoever" over the federal district and other territory ceded to the federal government by the states, such as for military installations. Federal jurisdiction is said to exist over such territory. Federal jurisdiction in this sense is important in criminal law because federal law, being based on a concept of enumerated powers, does not deal with crimes as comprehensively as the laws of any state. To fill in any potential gaps, Congress has enacted the Assimilative Crimes Act (18 U.S.C. § 13), which provides that any act that would have been a crime under the laws of the state in which a federal enclave is situated is also a federal crime. In U.S. military law, it is often vitally important to establish whether the federal government had proprietary jurisdiction (only the rights of any other landowner), concurrent jurisdiction (the right to legislate concurrently with the state government), or exclusive jurisdiction over the land where an act was committed in order to establish court-martial jurisdiction over the actor.

NOTES

FOR ALL AMENDED MOTIONS AND 1ST GROUNDS ON APPEAL, PLEASE, THANKS!

fedjur    EXHIBIT

## FEDERAL CRIMINAL JURISDICTION

It is a well established principle of law that all federal "legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears;" . And this principle of law is expressed in a number of cases from the federal appellate courts"The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."But, because of statutory language, certain federal drug laws operate extra-territorially; see United States v. King, 552 F.2d 833, 851 (9th Cir. 1976). The United States has territorial jurisdiction only in Washington, D.C., the federal enclaves within the States, and in the territories and insular possessions of the United States. However, it has no territorial jurisdiction over non-federally owned areas inside the territorial jurisdiction of the States within the American Union. And this proposition of law is supported by literally hundreds of cases.As a general rule, the power of the United States to criminally prosecute is, for the most part, confined to offenses committed within "its jurisdiction". This is born out simply by examination of Title 18, U.S.C. Section 5 thereof defines the term "United States" in clear jurisdictional terms. Section 7 contains the fullest statutory definition of the "jurisdiction of the United States." The U.S. District Courts have jurisdiction of offenses occurring within the "United States" pursuant to Title 18, U.S.C., Sec. 3231.Examples of this proposition are numerous. In Pothier v. Rodman, 291 F. 311 (1st Cir. 1923), the question involved whether a murder committed at Camp Lewis Military Reservation in the State of Washington was a federal crime. Here, the murder was committed more than a year before the U.S. acquired a deed for the property in question. Pothier was arrested and incarcerated in Rhode Island and filed a habeas corpus petition seeking his release on the grounds that the federal courts had no jurisdiction over an offense not committed in U.S. jurisdiction. The First Circuit agreed that there was no federal jurisdiction and ordered his release. But, on appeal to the U.S. Supreme Court, in Rodman v. Pothier, 264 U.S. 399, 44 S.Ct. 360 (1924), that Court reversed; although agreeing with the jurisdictional principles enunciated by the First Circuit, it held that only the federal court in Washington State could hear that issue. In United States v. Unzeuta, 35 F.2d 750 (8th Cir. 1929), the Eighth Circuit held that the U.S. had no jurisdiction over a murder committed in a railroad car at Fort Robinson, the state cession statute being construed as not including railroad rights-of-way. This decision was reversed in United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284 (1930), the court holding that the U.S. did have jurisdiction over the railroad rights-of-way in Fort Robinson. In Bowen v. Johnson, 97 F.2d 860 (9th Cir. 1938), the question presented was whether jurisdiction over an offense prosecuted in federal court could be raised in a petition for habeas corpus. The denial of Bowen's petition was reversed in Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442 (1939), the Court concluding that such a jurisdictional challenge could be raised in a habeas corpus petition. But, the Court then addressed the issue, found that the U.S. both owned the property in question and had a state legislative grant ceding jurisdiction to the United States, thus there was jurisdiction in the United States to prosecute Bowen. But, if jurisdiction is not vested in the United States pursuant to statute, there is no jurisdiction; see Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122 (1943). And the lower federal courts also require the presence of federal jurisdiction in criminal prosecutions. In Kelly v. United States, 27 F. 616 (D.Me. 1885), federal jurisdiction of a manslaughter committed at Fort Popham was upheld when it was shown that the U.S. owned the property where the offense occurred and the state had ceded jurisdiction. In United States v. Andem, 158 F. 996 (D.N.J. 1908), federal jurisdiction for a forgery offense was upheld on a showing that the United States owned the property where the offense was committed and the state had ceded jurisdiction of the property to the U.S. In <u>United States v. Penn</u>, 48 F. 669 (E.D.Va. 1880), since the U.S. did not have jurisdiction over Arlington National Cemetery, a federal larceny prosecution was dismissed. In United States v. Lovely, 319 F.2d 673 (4th Cir. 1963), federal jurisdiction was found to exist by U.S. ownership of the property and a state cession of jurisdiction. In <u>United States v. Watson</u>, 80 F.Supp. 649, 651 (E.D.Va. 1948), federal criminal charges were dismissed, the court stating as follows:"Without proof of the requisite ownership or possession of the United States, the crime has not been made out."In Brown v. United States, 257 F. 46 (5th Cir. 1919), federal jurisdiction was upheld on the basis that the U.S. owned the post-office site where a murder was committed and the state had ceded jurisdiction; see also England v. United States, 174 F.2d 466 (5th Cir. 1949); Krull v. United States, 240 F.2d 122 (5th Cir. 1957); Hudspeth v. United States, 223 F.2d 848 (5th Cir. 1955); and Gainey v. United States, 324 F.2d 731 (5th Cir. 1963). In United States v. Townsend, 474 F.2d 209 (5th Cir. 1973), a conviction for receiving stolen property was reversed when the court reviewed the record and learned that there was absolutely no evidence disclosing that the defendant had committed this offense within the jurisdiction of the United States. And in <u>United States v. Benson</u>, 495 F.2d 475, 481 (5th Cir. 1974), in finding federal jurisdiction for a robbery committed at Fort Rucker, the court stated: "It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor."In two Sixth Circuit cases, United States v. Tucker, 122 F. 518 (W.D.Ky. 1903), a case involving an assault committed at a federal dam, and United States v. Blunt, 558 F.2d 1245 (6th Cir. 1977), a case involving an assault within a federal penitentiary, jurisdiction was sustained by finding that the U.S. owned the property in question and the state involved had ceded jurisdiction. In In re Kelly, 71 F. 545 (E.D.Wis. 1895), a federal assault charge was dismissed when the court held that the state cession statute in question was not adequate to convey jurisdiction of the property in question to the United States. In United States v. Johnson, 426 F.2d 1112 (7th Cir. 1970), a case involving a federal burglary prosecution, federal jurisdiction was sustained upon the showing of U.S. ownership and cession. And cases from the Eighth and Tenth Circuits likewise require the same elements to be shown to demonstrate the presence of federal jurisdiction; see United States v. Heard, 270 F.Supp. 198 (W.D.Mo. 1967); United States v. Redstone, 488 F.2d 300 (8th Cir. 1973); United States v. Goings, 504 F.2d 809 (8th Cir. 1974) (demonstrating loss of jurisdiction); Hayes v. United States, 367 F.2d 216 (10th Cir. 1966); United States v. Carter, 430 F.2d 1278 (10th Cir. 1970); Hall v. United States, 404 F.2d 1367 (10th Cir. 1969); and United States v. Cassidy, 571 F.2d 534 (10th Cir. 1978).Of all the circuits, the Ninth Circuit has addressed jurisdictional issues more than any of the rest. In United States v. Bateman, 34 F. 86 (N.D.Cal. 1888), it was determined that the United States did not have jurisdiction to prosecute for a murder committed at the Presidio because California

fedjur

had never ceded jurisdiction; see also United States v. Tully, 140 F. 899 (D.Mon. 1905). But later, California ceded jurisdiction for the Presidio to the United States, and it was held in United States v. Watkins, 22 F.2d 437 (N.D.Cal. 1927), that this enabled the U.S. to maintain a murder prosecution; see also United States v. Holt, 168 F. 141 (W.D.Wash. 1909), United States v. Lewis, 253 F. 469 (S.D.Cal. 1918), and United States v. Wurtzbarger, 276 F. 753 (D.Or. 1921). Because the U.S. owned and had a state cession of jurisdiction for Fort Douglas in Utah, it was held that the U.S. had jurisdiction for a rape prosecution in Rogers v. Squier, 157 F.2d 948 (9th Cir. 1946). But, without a cession, the U.S. has no jurisdiction; see Arizona v. Manypenny, 445 F.Supp. 1123 (D.Ariz. 1977).The above cases from the U.S. Supreme Court and federal appellate courts set forth the rule that in criminal prosecutions, the government, as the party seeking to establish the existence of federal jurisdiction, must prove U.S. ownership of the property in question and a state cession of jurisdiction. This same rule manifests itself in state cases. State courts are courts of general jurisdiction and in a state criminal prosecution, the state must only prove that the offense was committed within the state and a county thereof. If a defendant contends that only the federal government has jurisdiction over the offense, he, as proponent for the existence of federal jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed and state cession of jurisdiction.Examples of the operation of this principle are numerous. In Arizona, the State has jurisdiction over federal lands in the public domain, the state not having ceded jurisdiction of that property to the U.S.; see State v. Dykes, 114 Ariz. 592, 562 P.2d 1090 (1977). In California, if it is not proved by a defendant in a state prosecution that the state has ceded jurisdiction, it is presumed the state does have jurisdiction over a criminal offense; see People v. Brown, 69 Cal. App.2d 602, 159 P.2d 686 (1945). If the cession exists, the state has no jurisdiction; see People v. Mouse, 203 Cal. 782, 265 P. 944 (1928). In Montana, the state has jurisdiction over property if it is not proved there is a state cession of jurisdiction to the U.S.; see State ex rel Parker v. District Court, 147 Mon. 151, 410 P.2d 459 (1966); the existence of a state cession of jurisdiction to the U.S. ousts the state of jurisdiction; see State v. Tully, 31 Mont. 365, 78 P. 760 (1904). The same applies in Nevada; see State v. Mack, 23 Nev. 359, 47 P. 763 (1897), and Pendleton v. State, 734 P.2d 693 (Nev., 1987); it applies in Oregon (see State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918) and State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987)); and in Washington (see State v. Williams, 23 Wash.App. 694, 598 P.2d 731 (1979)).In People v. Hammond, 1 Ill.2d 65, 115 N.E.2d 331 (1953), a burglary of an I.R.S. office was held to be within state jurisdiction, the court holding that the defendant was required to prove existence of federal jurisdiction by U.S. ownership of the property and state cession of jurisdiction. In two cases from Michigan, larcenies committed at U.S. post-offices which were rented were held to be within state jurisdiction; see People v. Burke, 161 Mich. 397, 126 N.W. 446 (1910) and People v. Van Dyke, 276 Mich. 32, 267 N.W. 778 (1936); see also In re Kelly, 311 Mich. 596, 19 N.W.2d 218 (1945). In Kansas City v. Garner, 430 S.W.2d 630 (Mo.App. 1968), state jurisdiction over a theft offense occurring in a federal building was upheld, and the court stated that a defendant had to show federal jurisdiction by proving U.S. ownership of the building and a cession of jurisdiction from the state to the United States. A similar holding was made for a theft at a U.S. missile site in State v. Rindall, 146 Mon. 64, 404 P.2d 327 (1965). In Pendleton v. State, 734 P.2d 693 (Nev. 1987), the state court was held to have jurisdiction over a D.U.I. committed on federal lands, the defendant having failed to show U.S. ownership and state cession of jurisdiction.In People v. Gerald, 40 Misc.2d 819, 243 N.Y.S.2d 1001 (1963), the state was held to have jurisdiction of an assault at a U.S. post-office since the defendant did not meet his burden of showing presence of federal jurisdiction; and because a defendant failed to prove title and jurisdiction in the United States for an offense committed at a customs station, state jurisdiction was upheld in People v. Fisher, 97 A.D.2d 651, 469 N.Y.S.2d 187 (A.D. 3 Dept. 1983). The proper method of showing federal jurisdiction in state court is demonstrated by the decision in People v. Williams, 136 Misc.2d 294, 518 N.Y.S.2d 751 (1987). This rule was likewise enunciated in State v. Burger, 33 Ohio App.3d 231, 515 N.E.2d 640 (1986), in a case involving a D.U.I. offense committed on a road near a federal arsenal.In Kuerschner v. State, 493 P.2d 1402 (Okl.Cr.App. 1972), the state was held to have jurisdiction of a drug sales offense occurring at an Air Force Base, the defendant not having attempted to prove federal jurisdiction by showing title and jurisdiction of the property in question in the United States; see also Towry v. State, 540 P.2d 597 (Okl.Cr.App. 1975). Similar holdings for murders committed at U.S. post-offices were made in State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918), and in United States v. Pate, 393 F.2d 44 (7th Cir., 1968). Another Oregon case, State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987), demonstrates this rule. And finally, in Curry v. State, 111 Tex. Cr. 264, 12 S.W.2d 796 (1928), it was held that, in the absence of proof that the state had ceded jurisdiction of a place to the United States, the state courts had jurisdiction over an offense.